We have counsel for safety PPE in the courtroom and we have, pardon me, and we have counsel for Skanda Group of Industries, James Sabovich, is that the right way to say that? You did. James Sabovich appearing by video with the court's permission. So, Mr. Sabovich, we'll allow you to begin. Thank you. May it please the court, James Sabovich on behalf of the appellants. What we have is a very narrow and specific issue that involves the interplay of a summary judgment standard and an offensive determination of alter ego, meaning that alter ego was decided against a private individual on summary judgment, which is not unheard of, but is a little unusual. This case involved... Well, it's not only unusual, there have been, happened on a couple of occasions. Antique Ford Foundation, there was a summary judgment, or excuse me, that was a bench trial, and the district court then ruled, and then in Wolf, there was a summary judgment, but they had stipulated facts. And at both times, the district court's application of alter ego for the bench trial, it was clear error. For the summary judgment on stipulated facts, it was not de novo review, and you here call for a de novo review. How is this different? Well, I think the overall summary judgment standard is de novo review. There's no question the overall standard is, but in this particular instance, we got Wolf, who had stipulated facts, and they said it wasn't de novo there. In fact, they rejected it. Well, I think in Wolf, you don't have a summary judgment. No, you have a summary judgment on stipulated facts. Well, there, again, if you have stipulated facts, and you're probably going to get a more specific, more deferential standard of review, you don't have that here. And I think our core argument here is that the court is determining disputed facts, so that puts us in a different situation. So at that point, as I understand it, there was an action to pierce the corporate veil brought by safety. Safety, at that point, demanded a jury trial. Is that also true? That is true. And then they had a summary judgment. That is correct, Your Honor. So you're suggesting in that particular situation, we would have de novo review, and we would be making that determination, believing the non-movement's evidence, and drawing all inferences from that evidence in favor of the non-movement. Is that your position? Yeah, that's effectively our core argument here, Your Honor. What evidence do you have which would undo what was done by the district judge here? The evidence that undoes it, that undoes it, I apologize, Your Honor, is the declaration of Mr. Carey. Which? The declaration of Mr. Carey. I can only believe that declaration if it's based on personal knowledge, right? It can't be conclusory. It can't be vague. It's got to have on personal knowledge something that person has got to have detailed facts, right? Well, partially yes and partially no, Your Honor. Well, isn't that what Palm says? An uncorroborated and self-serving affidavit will fail to create an issue of fact only in certain instances, such that it states only conclusions or facts based on inadmissible evidence. It states facts beyond the person's personal knowledge. It lacks detailed facts. That's what that says. Now, do you tell me why this affidavit doesn't do exactly that? Because it is based on personal facts, Your Honor, and it's based on facts. What facts are those that are pertinent? Facts are that if we break this down, it goes through the specific allegations that they made, and those range from the payment of HBO fees to an explanation of why that is a personal expense to veterinary things. As far as the personal facts, that would probably be most key for the district court. It is statements that what plain is alleged are improper personal transfer or actually documented loans, and that is something that Mr. Carey would have personal knowledge over. First, he says it in his declaration, and then second, he is the owner and manager of those companies. And I think what we're really getting to is an amount of detail, and I think to require him when really what plaintiffs are doing is they're going through the bank statements, and they don't have anything besides the bank statements. But the reason they did that is because his affidavit was pretty bare. There are no invoices. There are no contracts. There's no financial records. There's no nothing. All there is is a bare statement. This is the way it is, folks. That is somewhat true, Your Honor, but that's also what we're responding to. What we're responding to is not something where you have a transaction and then they have a deposition testimony or something else. For example, we're responding to something where there is a supposed transfer to a family maintenance account. You're just looking at an entry that says family maintenance account, and it turns out in that one the district court was incorrect, and we have all of these lumped together. So I think the idea that by just throwing out general allegations based on bank statements and really just a party looking at bank statements and speculating about them and then saying that that effectively shifts the burden to come over and disprove every single one of these is the opposite of what a summary judgment standard is. Was your client ever deposed? He was not deposed. So we can't say it's a sham affidavit, so we have to look at it in this way, right? That's correct, Your Honor. I think you could certainly say that it is. I don't think it's necessarily conclusory because conclusory is where you have an unfounded assumption built into it. You could say that it doesn't have a great amount of detail, which I think would be a fair characterization. Certainly if you're going to trial on this, we would come in with a great deal more evidence. But what we're talking about on summary judgment is just disproving what were on their side very general allegations. So if they're making general allegations that transfer to you. Well, to be fair, their allegations are a lot more specific than are yours. I mean, I can go through here and just look at the kind of things that the district court had to look at and how and where and what was happening. A lot more facts than there ever were in this affidavit. There are, in a sense, that they have specific numbers, Your Honor, but I think those break down into specific categories of things that can be addressed in a general way. It's fairly easy when you're looking at a bank statement to be specific about it. That doesn't mean that because you have a specific number, you're being specific about the allegations. So you can have many intercompany transfers between related companies, but the fact that you have that doesn't mean that you've in any way proven that those transfers are improper. And the fact that he is dealing with these as a group saying that these are documented loans or we give an example of one of them being a payment of an invoice from another related company for advertising services doesn't mean that the testimony is improper. And I certainly take Your Honor's point that there could be a great deal more, but when we're talking about summary judgment and all we're doing is just proving what is essentially stating, looking at a bank record and then ascribing a nefarious motive to a transfer, I don't think that you necessarily have to go into a great amount of detail for each one. Can I ask about an example on that? Certainly. So one of the really important facts in my mind is the return of the deposit and whether the money that came back to Skanda Group was that $3.6 million that was transferred at the end of October and in mid-October. When you look at the numbers and the explanation that's in the affidavit, the affidavit's numbers don't really line up. The last payment went out at the very end of October. It seems to line up very clearly that that $3.6 million was a $3.6 million that was sent over as part of safety PPE's deposit. How could a reasonable jury conclude otherwise, given that your client hasn't come back with anything to support the contentions in the affidavit? Well, I think first I would say that as far as the refund, the evidence is actually undisputed that there were two separate transactions. There was a transaction where my client put in, first there was the $1 million in this transaction. Then there's another $1.8 million. And it is the case that it does look like certainly the $3.6 million number rounded up, but a jury could find that given the confusion that is going on at the time, the evidence was that the CEO of Formosa was very unexpectedly arrested for some dealing with China, which no one expected about certainly the companies in a bit of chaos. My client cancels, safety does not cancel, and $3.6 million comes back. And to be clear, we never took the position that that $3.6 million didn't include some money that would be part of the other transaction. It's just that the vast majority, the bulk of it, is from the underlying or from the transaction that did not involve safety. And to answer your Honor's question on summary judgment, they kind of have to believe our version. That's how the rule works. All right. Sort of a different question in switching gears. There's a second case, and because this briefing was unfolding, there was a default judgment entered against your client, and the safety PPE asked the court to take judicial notice of that. What is left after that default judgment? What are we doing here still, given that there's now a judgment against your client personally, and it's in excess of what the amounts we're dealing with here? What's left of this case? What's the point here today? So I will answer with the caveat that I'm not counsel in this matter, and without going into details, we've had fairly limited contact with our client. My understanding is that that case is resolved. I'm not sure what actually is left. I would defer on my friend, as I understand it, probably have a better understanding of that case than I would your Honor. You're talking about opposing counsel, your friend? Yes. Okay. All right. I'm just trying to make sure you're not talking about that other guy you say, because you're not counsel him. I'll ask him. Because I had the same question. I thought, well, why are we here? It may be the case that certainly, and I believe, certainly the issues with the property on Mustang Lane may have been, in significant part, mooted because of that matter. I am not involved in it, so I can't speak to it, your Honor. I just want to reserve some time. Yeah. Do you want to reserve some time? Certainly, your Honor. Thank you. Okay. I'm just wondering if you have further questions. I don't. If you want to ask any further, any questions, gentlemen. No. All right, Counselor. We're ready for you, Mr. Menendez. Good morning, your Honor. As a matter of police of court, Fernando Menendez on behalf of Appellee Safety Committee. May we pick up Judge Inderakar's question first? Okay. With respect to the other matter that was brought before the district court that was resolved, initially all counsel were represented. Counsel withdrew with the approval of the court. We ultimately obtained a judgment by default. That judgment is now final, non-appealable, and it includes claims against all of the various entities that are the fraudulent transferees here on fraudulent transfer theories and on conspiracy with respect to the other parties, including Mr. Carey, who's also subject to that judgment. So to some extent, it's liability on somewhat different claims for similar amounts arising from the same course of action. But the default judgment says anything that's paid on that judgment counts against the judgment in this case. That is correct, your Honor. And the default judgment in that case is for a larger amount? That is correct. All right. So why are we here? I don't know, your Honor. I do not understand if there is some strategic reason why the defendant, who is, I understand, has lived outside of the U.S. at different points in time. Obviously, the enforceability of judgments outside of the U.S. can sometimes be impacted if a judgment is other than pursuant to a full trial or judicial proceeding. So there may be some strategic view with respect to the potential impact of a judgment on default versus one on the merits that I'd be speculating. Following up on Judge Smith's first question, do you disagree that there's standard overview of Harris-DeNovo? I do. I believe that under Wolf and the facts stipulated that are here, they're disputed. So it seems like a yes or a no. Except if we go through, I think that it goes to the issue of what is actually disputed. If we go through the court's opinion and all of the findings that Judge Walter made, I think that it's fair to characterize defendant's response or appellant's position that they presented evidence suggesting that there was some reason other than commingling why the transactions took place. They do not question that the transactions took place. They do not question that the transfers occurred. They do not question that the entities received the funds. So Scandigroup says all you really have are bank statements that show transfers in and out. That seems to be correct. I mean, that's really what we're talking about when we get to the L3O claim. And when you just look at a bare transfer, don't you have to start drawing an awful lot of inferences to make the next step as to what that transfer actually meant? And once we start drawing inferences, don't those all have to go in favor of Scandigroup? Your Honor, I think in the typical alter ego case, that is what makes it a remedy that is typically not appropriate for summary judgment. Here, however, if we look at the transfers, what we see from those bank records, and extensive as you've seen the record, bank records were submitted to the court, we see, and Judge Walter made note of this, we see a depletion of those accounts beginning from the time the transfer was returned. And by the way, the court put no weight on whether that $3.6 million was or was not the transfer. He noted, in the same way that Your Honor has, seems like it's the transfer that went out that came back. That said, by the time you receive those funds, it's undisputed that you received the deposit from Safety PPE that you transferred it out. You were breached of the contract. Nevertheless, during this period of time, we see a series of transactions whereby you've taken approximately more than a $4 million balance in those accounts and winnowed them down to the point that they're $200. And we see- I don't see other explanations for that, though. I mean, one of the explanations is Scandimedia. We made a payment. He says in the affidavit or the declaration, the payment was made for media services. Then they paid salary to Mr. Carey. He has personal knowledge of that. Why shouldn't that be taken as true for purposes of assembly judgment? Because that standard runs afoul of a very well-settled precedent in the Ninth Circuit that says you cannot rely. Once one side has met its burden presenting at least that there is no genuine issue, based on the magnitude and transactions that we're talking about, the other side has an opportunity to come back. And that opportunity to come back, in order to establish a genuine issue of material fact, it cannot absolutely under numerous Ninth Circuit authorities, including Taylor, Nielsen, Arrows Aeronautical. Taylor and Arrows Aeronautical, by the way, were cited by the district court. They're not discussed at all in the briefing before this court. It's in our brief. It was not in the initial brief. And that's a critical standard. So we have both altered ego, but at the same time, that needs to be viewed through the lens of what the evidentiary standard is on summary judgment. And the question is, once safety PPE presents this bundle of evidence that shows bank records, the pleading accounts, we show attachment orders being entered in the subsequent purchase of the house. Why isn't a declaration that says this payment was made for purposes of media services, that's based on personal knowledge, it seems like it would be admissible at trial. He seems to be in a position to know that. Why isn't that enough for purposes of summary judgment? So if we look through a few examples, if I may, Your Honor, if we look at the actual declaration here with respect to virtually every one of the points that we're discussing here, which are millions of dollars in transactions, the Ninth Circuit law basically says you can have a declaration. Declaration can be a basis for creating a genuine issue of material fact. But it needs to be detailed. You can't merely plead the case as that dead on. I mean, I read Taylor, but I don't think that's what Taylor says. So the case in Taylor, the issue was a request for summary judgment had been granted against an inmate on a 1983 claim. And that inmate had presented an affidavit that said the lieutenant within this facility deprived me of the ability to access law books and clerks to assist in my, you know, legal defense. And the court said it is not enough to plead the conclusion that that individual did that. All you're arguing is that if it's conclusory or if it's vague, that's not enough. But if it's based on facts within the person's personal knowledge, it is correct. It is enough. And what we're trying to do, and I guess what the district court was trying to do, is say with this affidavit, is it really conclusory, every bit of it? Is it really without any corroborating evidence? I mean, there's nothing except the one affidavit, and there's nothing except the conclusion, if you can say it is. But if you read it and it's personal knowledge and it's facts, it's not very much to get by this. And I can understand what you're reading with Taylor, because it was a criminal situation. But all he was doing is saying, that's my opinion about what that guy did. But he didn't give any facts about this. This isn't this. This is personal facts. If I may, so I could walk through this. All I'm trying to do is just give you. I understand. So if we look at the declaration, this is the record of 370 and 371, and it takes virtually no time. We're talking about millions of dollars in transfers, and these are the responses. On paragraph 23, with respect to 500, excess of approximately $519,000 worth of transfers to Coinbase that were identified in bank records. This is the response. Quote, plaintiff questions transfers of approximately $519,000 to Coinbase. This was an unsuccessful SCANDA investment. Had the investment generated a return as many people expected crypto investments would do at the time, SCANDA would have made a substantial return. This is a conclusion. There are no facts stated. It was an unsuccessful SCANDA investment. He could have very easily produced the Coinbase records, the account agreement, the nature of the investment. But how did you get those through discovery? The fraud here was discovered about the wealth, the activities here. That's what's odd to me about this case is it doesn't look like, and I understand you were focused on the breach of contract claim, and that's a very different sort of case to get summary judgment on a claim versus an alter ego, and I understand that's where you were focused. But it doesn't look like there's been much discovery on your side on the alter ego issue, and that's why you're coming to the court with bank records and then asking that all these inferences be drawn in your client's favor really on the bank record transfers, the transfers. So am I correct that there just wasn't much discovery done on these issues by your side? Our firm, Your Honor, came into the case very late in the process. And when we did, through independent research and review of public records, that's when we discovered the acquisition of the property that's referenced here that's undisputed to be Mr. Cary's personal residence. And by looking at public records, we saw the formation. We did further research and discovered that the entity had been formed days after the district court's attachment order by his mother. There was virtually no time left during the discovery window. We moved to have that expanded, and the magistrate judge did not allow discovery to be extended. In that case, nevertheless, we believe that the record here is egregious. It is at least at the very minimum sufficient to meet the burden that is on the plaintiff with respect to showing one of the critical factors, which is leaving an entity totally undercapitalized. At that point, the burden shifted for the defendant to raise the necessary evidence for rebuttal to allow this type of declaration to survive scrutiny. The Ninth Circuit, I think, would do damage to the standards that currently exist with respect to actually presenting facts, because I think they can be fairly characterized as conclusions. It's an unsuccessful investment. That can be shown. Counsel, Judge Gould, if I could ask you a question, please. Yes, Your Honor. As to whether the declaration or affidavit raises a genuine issue of material fact, isn't that a question that our panel has to review de novo because a summary judgment was granted? Yes, Your Honor. And I would submit that even reviewed de novo, this declaration would not survive muster under the standards of the Ninth Circuit as far as what is required for a responsive affidavit. Okay. Thank you. Thank you. Can I ask another question about the family maintenance issue that transfers out? Yes. And I just want to be clear. I understand that your side is conceding. It wasn't totally clear, but you can see that that came out of a personal account, the family maintenance, and the district court judge was just simply mistaken about that. So I think that the issue here is that we really have the briefing states that the court heavily relied on that conclusion. It did not address the order. It's one sentence, correct? And what that sentence refers to is on the prior page, on page 40, the court makes reference to, moreover, these same entities, Scanda Landscaping, Scanda Media, and Scanda Forestry, have transferred in excess of $150,000 to Carrie's personal account. My time is up. Oh, I'm sorry. No, you've got it. So that sentence is the sentence on the subsequent page relating to family maintenance is erroneous only to the extent that it references Mr. Carrie's personal account as a family maintenance account. It doesn't. The record shows, and I can provide citations, the record shows that upon receiving a substantial transfer from one of these entities on the same day, Mr. Carrie subsequently made a further transfer out for family maintenance, and I think that's a confusion here. But I think the core issue the court was focused on is Mr. Carrie made transfers out in the millions to these other entities. These other entities made transfers to him, and they're completely unexplained. But the error, Mr. Carrie is limited to the fact that Mr. Carrie's personal account is not entitled to family maintenance. Thank you. Anything further? No, Your Honors. Thank you very much. Do you have some time for a bottle count? Do you have anything to say? I think you're on mute. I think you're on mute. I think you've moved. I knew I was going to do that at some point, Your Honor. I apologize. Very briefly, I think what this comes down to isn't so much that there is nothing in the declaration that would be considered to require everything, and I think it flowed into it. It's that we didn't put on what would be considered all the supporting evidence, and I think the example that was used. I don't think that's what counsel argued. Counsel argued he's got cases, and he cited the cases that suggested that all that was said here was, and put it in his words, nothing more than conclusions. Only conclusions. Nothing, only statements that were vague and conclusions. That's all he's saying. And he cites the cases that say you can go forward, Judge, and sustain this district court. That's what the district court thought as well. Understood, Your Honor. I don't think that these can be fairly characterized as just conclusions, and I think the sentence about the investment for Coinbase is an example. That's something that he has personal knowledge of. Now, granted, he could prove that. He has personal knowledge, but everything he said about that personal knowledge is a conclusion. That's what he's trying to bring forward. Simply like the case he cited, which was this prisoner who had a conclusion about the jailer and what the jailer had done, and he said that was enough and put it in the affidavit, and we said that's not enough. Understood. I think that case is a little different. You're talking about, in the prisoner case, essentially close to a legal conclusion. We're sure whether something is an investment or not an investment is a fact. He's someone who has personal knowledge of this. Now, granted, we can go through, and certainly if it was trial, we would, and put in all the evidence from all the different transactions and whatnot, but I don't think that's required on summary judgment. Briefly, for the undercapitalization, I don't think that that was proven. Undercapitalization requires more than just a showing of a low balance. It requires a showing that the corporation is unable to be a going concern and unable to meet their debt as they become due, which was not shown here. Ultimately, I think we have an alter ego where there just wasn't discovery done that would support alter ego. Let me ask you a further question, which goes along with my colleague's question, and I realize that she said, oh, I'm not the lawyer there, so I can't tell you anything, but it seemed to me, based on what counsel told me about what was in the other case and the fact that there's a default judgment there, I'm wondering why in the devil we have this case. Why you're continuing with this kind of a case? If we're just going to, everything they get from this case, they apply here, it's all, I guess I'm wondering what we're really doing and if you need to go back and talk to somebody and see if this really needs to go forward. I mean, would they rather do that than me bless the summary judgment in this particular case? That's a fair question, Your Honor. I'm not trying to be evasive, but I can tell you that the appeal certainly was not taken for strategic purposes. I didn't do it for that. The appeal's been pending for a little while, and the case proceeded, which I'm not involved with, below and reached a resolution, but I apologize, I don't have information on that case, Your Honor. I just was having you think about what the situation is here. Having been an old mediator who was on the court when I was a district judge, the situation is you're up against having a second judgment now, and you've heard what the arguments are and that we're looking very carefully at these statements as to whether they're really conclusory or not, and maybe this isn't worth your money. That's all I'm trying to do is just make you look at it. I appreciate Your Honor's insight. Thank you. Thank you. All right. This case is then, this case of 2355-241, safety PPE versus standard group of industries is submitted, and the court is adjourned for this week and for this case. Thank you. Thank you, Your Honor. Thank you. All rise. Judge Gould's going to meet us in the other room. He doesn't have to work too hard to get there. Thank you all, and thank you for coming all the way from Miami and your good argument. We appreciate you. Thank you very much, Your Honor. Thank you. This court for this session stands adjourned.
judges: GOULD, SMITH, UNKNOWN